UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Docket No. 16-CR-40025-TSH |
| (2) CARLOS JIMENEZ | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT CARLOS JIMENEZ'S MOTION TO STRIKE**

The United States of America, by and through its attorneys, Acting United States Attorney William D. Weinreb and Assistant United States Attorney Michelle L. Dineen Jerrett, submits this opposition to Defendant Carlos Jimenez's Motion to Strike and Supplemental Memorandum in Support of Motion to Suppress Identification ("Motion to Strike"). Jimenez has moved to suppress an out-of-court identification of him by a cooperating witness ("CW"). Jimenez's co-defendant, Ivan Cruz-Rivera, introduced Jimenez to the CW on October 4, 2013, when the two defendants delivered a half kilogram of heroin to the CW. Thereafter, law enforcement followed the car driven by Jimenez, in which Cruz-Rivera was a passenger, and conducted a stop of the vehicle. During the car stop, Jimenez identified himself through, *inter alia,* a driver's license issued by the state of New Jersey. In August 2014, the CW identified Jimenez (who law enforcement already had identified during the car stop) from a single-photo array – Jimenez's NJ driver's license photograph – after he began cooperating with law enforcement.

During the suppression hearing, Jimenez's counsel cross-examined Fitchburg Police Department Sergeant John Maki ("Sgt. Maki"), a former Task Force Officer with DEA and the original case agent in this investigation, regarding the CW's identification of Jimenez from the

1

single-photo shown to the CW approximately 10 months after Jimenez and Cruz-Rivera delivered heroin to the CW.  During the cross-examination, Jimenez's counsel attempted to undercut the reliability of the CW's identification of Jimenez by questioning Sgt. Maki about whether he asked the CW questions, *inter alia*, regarding the CW's ability to see Jimenez, the location of the meeting, the lighting conditions of the office in which they met, distance between the CW and Jimenez during their interaction, and the duration of the time they were together.

On May 24, 2017, counsel for the government met with the CW along with the current case agent, DEA TFO Jeffrey Thibodeau ("TFO Thibodeau").  As previously represented to the Court by the government, this interview was scheduled prior to the inception of the hearing on the motion to suppress, and involved coordination of transportation of the CW to the courthouse by the United States Marshals Service.  The government informed TFO Thibodeau about the May 24, 2017 meeting on May 15, 2017.  At the time the meeting was scheduled, the government did not know that Sgt. Maki's testimony would be concluded.

During the May 24, 2017 interview of the CW, the government asked the CW questions relating to the circumstances of the CW's meeting with Jimenez.  Among other things, the CW stated that he met with Jimenez and Cruz-Rivera in a well-lit office approximately 12' by 16' in size and that they were the only three present during the meeting.  The CW also stated that he was watching Jimenez because he had never met him before and did not know if Jimenez could have been a "cop" or trying to rob the CW.  The CW also stated that he and Jimenez discussed the fact that Jimenez was a firefighter and had family in Lawrence, Massachusetts.  The CW also described how Jimenez told the CW about the good quality of the heroin he and Cruz-Rivera were delivering and talked about the dark color and sour smell of the heroin. The CW stated that Jimenez was very close to him when Jimenez talked about the quality of the heroin.

Jimenez argues that TFO Thibodeau's testimony should be stricken because it denied Jimenez a meaningful opportunity to cross-examine the CW.   It is well-settled that a court may properly consider hearsay evidence at a suppression hearing.   See United States v. Schaefer, 87 F.3d 562, 570 (1st Cir.1996).   Jimenez's counsel aggressively cross-examined TFO Thibodeau about his meeting with the CW.   Jimenez will have ample opportunity at trial to cross-examine the CW about the identification as well as the CW's testimony regarding Jimenez's participation in the heroin delivery on October 4, 2013 and the CW's May 24, 2017 meeting with Sgt. Thibodeau if Jimenez so chooses.   The question for the Court at this stage is whether the identification of Jimenez should be suppressed, and the Court should be able to consider all relevant evidence, including the May 24, 2017 interview with the CW.

There is nothing improper about TFO Thibodeau's testimony, or the Court's ability to consider that testimony, at the motion to suppress.   Indeed, the government submits that TFO Thibodeau's testimony about information the CW provided relating to the CW's opportunity to observe Jimenez during the heroin delivery properly informs the Court about whether the CW's identification of Jimenez was unreliable under the totality of circumstances such that there was a "very substantial likelihood of irreparable misidentification."   United States v. Rivera-Rivera, 555 F.3d 277, 282 (1st Cir. 2009).[1]   Much as Jimenez would like to restrict the "totality of circumstances" to only that information he believes helpful to his position, the Court should consider all relevant information in making any necessary reliability determination.

Historically, it was well-settled that the Confrontation Clause did not apply to suppression hearings.   See, e.g., McCray v. Illinois, 386 U.S. 300, 313 (1967) (concluding that use of

---

[1] The Court does not even reach the reliability issue unless the defendant can show that the single-photo identification procedure was impermissibly suggestive.   United States v. Arthur, 764 F.3d 92, 99, (1st Cir. 2014).

informant's hearsay at hearing on motion to suppress did not violate Confrontation Clause); Pennsylvania v. Ritchie, 480 U.S. 39, 52-53 (1987) (affirming that "right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination) (plurality opinion) (emphasis in original) (citing cases); United States v. Raddatz, 447 U.S. 667, 679 (1980) (Supreme Court noting that "interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself"); California v. Green, 399 U.S. 149, 157, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970) ("[I]t is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause"); Barber v. Page, 390 U.S. 719, 725 (1968) ("[t]he right to confrontation is basically a trial right").

Even after the Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), federal courts have continued to hold that the Confrontation Clause does not apply at suppression hearings.  See Ebert v. Gaetz, 610 F.3d 404, 414 (7th Cir. 2010) (concluding that Confrontation Clause not implicated because the hearsay statements considered by the court were at a suppression hearing, not the defendant's trial); United States v. Davis, 361 Fed.Appx. 632, 636 (6th Cir. 2010) (rejecting challenge to use of hearsay at suppression hearing, and concluding even if Confrontation Clause applied at suppression hearing, no violation occurred); United States v. Miramonted, 365 F.3d 902, 904 (10th Cir. 2004) (case decided after Crawford v. Washington, although not specifically mentioned, but concluding that hearsay testimony admissible at suppression hearings); Francischelli v. Potter, 2007 WL 776760, *10 (E.D.N.Y. 2007) (noting that the court could "find no authority applying *Crawford* to a suppression hearing").  Indeed, Jimenez has not pointed to a single case in which the Confrontation Clause applied to a suppression hearing, and this case should be no exception.

As defense counsel well knows, even if Jimenez can demonstrate that the single-photo identification procedure was impermissibly suggestive, he must also be able to establish a "very substantial likelihood of irreparable misidentification" in order to prevail on his motion to suppress the identification. In order for the Court to make its determination, it should consider all information relevant to the CW's ability to observe Jimenez during the heroin delivery on October 4, 2013. Jimenez will have ample opportunity to cross-examine the CW at trial.

The government respectfully requests that the Court deny Defendant Carlos Jimenez's Motion to Strike and Supplemental Memorandum in Support of Motion to Suppress Identification.

        Respectfully submitted,

        WILLIAM D. WEINREB
        Acting United States Attorney

By:   */s/ Michelle L. Dineen Jerrett*
        MICHELLE L. DINEEN JERRETT
        Assistant U.S. Attorney
        United States Attorney's Office
        District of Massachusetts
        Donohue Federal Building
        595 Main Street
        Worcester, Massachusetts 01608
        Michelle.Dineen.Jerrett@usdoj.gov

Date:   September 12, 2017

---

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

        /s/ Michelle L. Dineen Jerrett
        Michelle L. Dineen Jerrett
        Assistant U.S. Attorney

Date:   September 12, 2017