UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Docket No. 16-CR-40025-TSH |
| (2)    CARLOS JIMENEZ ) | |
| ) | |
| Defendant. ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys Andrew E. Lelling, United States Attorney for the District of Massachusetts, and Assistant United States Attorneys Michelle L. Dineen Jerrett and William F. Abely, hereby submits this sentencing memorandum respecting the Defendant Carlos Jimenez (the "Defendant" or "Jimenez").

In the Final Pre-sentence Report ("PSR"), the Probation Office ("Probation") determined that Based upon these calculations, the Defendant's advisory guideline range is 78 to 97 months imprisonment. The Government recommends that the Court sentence the Defendant to a term of incarceration of 78 months imprisonment, the low-end of the guidelines, to be followed by 4 years of supervised release.

### I. BACKGROUND

The Court is well aware of the facts of this case from both the lengthy evidentiary hearing on Defendant's Motion to Suppress and the lengthy trial in this matter. In short, Defendant, along with his co-defendant, Ivan Cruz-Rivera, delivered ½ kilogram of heroin on October 4, 2013 to an individual (the "Target") who was then under investigation by the Drug Enforcement Administration ("DEA"). The DEA investigation had been on-going for a number of months,

and on October 4, 2013, DEA was conducting surveillance and attempting to conduct a controlled purchase of 125 grams of heroin utilizing a Confidential Source ("CS"). When the CS arrived at the Target's auto body garage on Union Street in Leominster, MA, the Target told the CS that the heroin was on the way and instructed the CS that he could return later to make the purchase.

Within minutes of the CS leaving, agents observed a Gray Lexus bearing NJ Registration D17CLD pull into the auto body garage driveway as the Target was observed outside waving the vehicle into the location. The vehicle remained for just under two hours, and then departed; surveillance followed the vehicle. During a subsequent motor vehicle stop of the Lexus, a Massachusetts State Police Trooper identified the driver as Jimenez and the passenger as Cruz-Rivera. The occupants gave inconsistent answers as to where they had been coming from, and after a lengthy evidentiary hearing on the matter, the Court determined that law enforcement had probable cause to search the vehicle. During the search, a backpack containing $44,000 in U.S. currency, divided into 12 bundles, was recovered, and a certified narcotics-detecting canine positively alerted to the currency.

Within approximately 45 minutes of the Lexus departing the Leominster garage, the Target sold 125 grams of heroin to the CS. A few months later, the Target was charged with narcotics offenses relating to the on-going DEA investigation, and began cooperating with law enforcement, providing information relating to Cruz-Rivera and Jimenez.

## II. ARGUMENT

In determining a defendant's sentence, the court must consider the Sentencing Guidelines and determine the advisory sentencing guideline range which, once calculated, establishes the

court's "starting point" or "initial benchmark."  See Gall v. United States, 128 S. Ct. 586, 596 (2007).  Next, the court should consider the various factors set forth in 18 U.S.C. § 3553(a).  Only after consideration of those factors should the court reach its ultimate determination.  See United States v. Martin, 520 F.3d 87, 91 (1st Cir. 2008).  In weighing the § 3553(a) factors, the First Circuit has emphasized that an individualized determination is, at all times, the touchstone: while a deviation from the guidelines may be warranted in certain instances; in other instances, it will not be.

      A.      **Abuse of Position of Trust Enhancement Applies**

Without submitting any supporting case law, the defendant has filed an objection to the 2-point enhancement for abuse of position of trust pursuant to USSG §3B1.3 claiming both that there was no abuse of his position and that any abuse was not significant enough to warrant the enhancement.  Neither argument is persuasive.

In determining whether the abuse of position of trust enhancement applies, this Court should consider (1) Trooper DiCresenzo's trial testimony on the issue, (2) Trooper DiCrescenzo's testimony during the motion to suppress hearing, and (3) the Target's testimony at trial.  At trial, the Target testified he first learned about the fact that Cruz-Rivera, his source of heroin supply since 2012, was bringing along a friend of his who was a New Jersey firefighter (later identified as Defendant) to deliver the anticipated ½ kilo of heroin on October 4, 2013.  Cruz-Rivera further told the Target that his firefighter friend occasionally made these drug delivery trips with Cruz-Rivera because he was less likely to be hassled by the police if they were pulled over.  Indeed, even when the Target first met Defendant on October 4, 2013 at the Union Street garage in Leominster, Defendant told the Target that he was a firefighter and

bragged about making these types of trips with Cruz-Rivera because he was less likely to get in trouble with the police if they were stopped.

During both the hearing on the defendants' motions to suppress and at trial, Trooper DiCrescenzo testified about the stop of the Lexus on October 4, 2013 that was being driven by Defendant and in which Cruz-Rivera was a passenger. At the suppression hearing, Trooper DiCrescenzo testified that after asking Defendant for his license and registration upon being pulled over, Defendant produced his license and produced or made visible a firefighter badge. Trooper DiCrescenzo testified during the suppression hearing that Defendant had retrieved the firefighter badge from his wallet and it was in his hand or Defendant made it very conspicuous to the trooper. Over defense counsel's objection, Trooper DiCrescenzo also testified during the hearing on the motion to suppress that in his experience, individuals will often use official documentation or even identification as a way to have the law enforcement officer let their guard down during an investigation. At trial, undersigned counsel recalls that Trooper DiCrescenzo testified that Defendant did not verbally state that he was a firefighter but that he made his firefighter badge visible to the trooper when he retrieved his license from his wallet.[1]

Defense counsel's suggestion that there was no use at all of his firefighter credentials is contrary to Trooper DiCrescenzo's testimony both at the suppression hearing and at trial.

---

[1] Trooper DiCrescenzo's testimony also was that Defendant's hands were visibly shaking as he retrieved his license and firefighter credentials, and that his behavior well-exceeded the normal level of nervousness exhibited by individuals pulled over for minor traffic offenses. Defendant also began providing false information to the trooper about where he and his passenger, Cruz-Rivera, had been coming from, and denying that they made any stops during their trip that day besides Lawrence (when the trooper knew from another MSP trooper that the defendants had been in Leominster for approximately 2 hours prior to being followed from that location to Sturbridge where the vehicle was pulled over).

Indeed, Defendant's conspicuous display of his firefighter credentials was significant enough for the trooper to have observed them. To suggest that there was no use of these credentials is contrary to the testimony and to common sense.

Defendant next asserts that he did not use his firefighter credentials enough to warrant an enhancement for abuse of position of trust, suggesting that because Jimenez's use of his credentials did not result in him being permitted to leave without further inquiry, that his unsuccessful use of the credentials was not significant enough. This argument is contrary to established case law.

In United States v. Foreman, 926 F.2d 792 (9th Cir. 1990), the court upheld the applicability of an abuse of position of trust enhancement for a police officer who showed her police badge and identified herself as a police officer in response to a stop by airport police who had been suspicious about her behavior. Noting that her attempt at concealing her drug activity through the use of her badge was unsuccessful, the court nevertheless concluded that the enhancement should apply. Id. At 796-97. The enhancement has even been applied to individuals who *formerly* occupied a position of trust. See United States v. Innamorati, 996 F.2d 456, 490 (1st Cir. 1993) (upholding application of USSG § 3B1.3 for former police officer with the Massachusetts Registry of Motor Vehicles who utilized his position of trust to improperly access license plate information through registry computer system). Here, Defendant is a firefighter rather than a police officer, but that should in no way minimize his attempt to use his position of trust to conceal his offense. See United States v. Lamb, 6 F.3d 415, 419 (7th Cir. 1993) (noting that "it would be contrary to logic and common sense to hold that just because a person has a 'low-level' job, he cannot be considered to occupy a position of trust. For example,

one must agree that police patrolmen, firemen, probation officers, and game wardens, although they may be at the lower end of their respective departmental organizational charts, occupy positions of trust.  Regardless of where any of these governmental officers fit into their departmental organizations, they are without a doubt in positions of trust and if they use that position of trust to facilitate or conceal a crime they should receive the two level sentence-enhancement.")

### B. Minimum Mandatory Sentence Applies

Defendant also argues that, despite the jury's verdict to the contrary on Count 2, the Court should not conclude that the offense here involved 100 grams or more of heroin, and attribute that amount for purposes of applying the minimum mandatory 60-month sentence or for calculating the guidelines for Jimenez.  Essentially, Defendant argues that because the jury did not find that 100 grams or more of heroin was reasonably foreseeable and attributable to Defendant in the *conspiracy* count (Count 1), the Court should entirely disregard the jury's finding on Count 2 that "the quantity of heroin that the Defendant, CARLOS JIMENEZ, possessed with intent to distribute or distributed [was] 100 grams or more of a mixture or substance containing a detectable amount of heroin."  Defendant asserts that his knowledge of the quantity of heroin is required to impose a statutory minimum mandatory sentence and cites United States v. Pizarro, 772 F.3d 284, 294 (1st Cir. 2014) for support.

Defendant argues that because the jury found for Count 1 (the conspiracy count) that 100 grams or more of heroin was not reasonably foreseeable and attributable to him, it somehow draws into question the jury's finding for Count 2 (the possession with intent to distribute / distribution count) that the quantity of heroin Jimenez possessed was 100 grams or more.  To the

extent Jimenez argues that there are inconsistent verdicts, case law is clear that "[c]onsistency in the verdict is not necessary.  Each count in an indictment is regarded as if it was a separate indictment. . . . If separate indictments had been presented against the defendant for possession and for maintenance of a nuisance, and had been separately tried, the same evidence being offered in support of each, an acquittal on one could not be pleaded as res judicata of the other.  Where the offenses are separately charged in the counts of a single indictment the same rule must hold."  Dunn v. United States, 284 U.S. 390, 393 (1932).

Despite Jimenez's assertions to the contrary, a jury is required only to find that the offense involved a particular quantity of heroin in order to increase the minimum mandatory penalty that applies.  Alleyne v United States, 570 U.S. ___, 133 S.Ct. 2151 (2013) did not change the *mens rea* requirements that the government must prove at trial.  The government agrees that Alleyne requires that any fact which increases the mandatory minimum must be determined by a jury, and that is precisely what occurred here.  What Defendant tries to argue is that the government must prove that the defendant knew the particular quantity of drug involved, and that is simply not the law.[2]

---

[2] Similarly, the government is not required to prove that a defendant knew any more than he was trafficking in a controlled substance, and need not prove the defendant's knowledge of a particular substance.  See United States v. Barbosa, 271 F.3d 438, 458 (3d Cir. 2001).  In Barbosa, decided post-Apprendi, the court noted that section 841 of the Controlled Substances Act "affords no support for a requirement that the Government must prove more than the defendant's knowledge that he was trafficking in a controlled substance."  Citing United States v. Lewis, 113 F.3d 487, 491 (3d Cir.1997), the court noted that "[w]hile Congress could have enacted separate statutes criminalizing the distribution of particular controlled substances, it did not do so. Instead, it characterized the determination of the identity and the weight of the controlled substance as penalty factors in section 841(b). We must honor that approach."

The First Circuit Pattern Jury Instructions address the issue of drug weight as follows:

> Under <u>Alleyne</u> and <u>Apprendi</u>, the jury must find the mandatory-minimum and statutory-maximum triggering elements by proof beyond a reasonable doubt. <u>United States v. Rivera-Ruperto</u>, 2017 WL 128003, at *18-19 (1st Cir. Jan. 13, 2017); <u>United States v. Pizarro</u>, 772 F.3d 284, 293 (1st Cir. 2014); <u>United States v. Paz-Alvarez</u>, 799 F.3d 12, 22-23 (1st Cir. 2015) (preferable to discuss drug quantity alongside other elements of the crime or reiterate the reasonable doubt standard if instructing on drug quantity only when explaining the verdict form). The First Circuit has instructed that "<u>Alleyne</u> did not hold that a trial court must identify weight as an element of an offense in instructing the jury. <u>Alleyne</u> simply holds that, where weight increases the statutory minimum, it is an element and thus must be proven beyond a reasonable doubt." <u>United States v. Amaro-Santiago</u>, 824 F.3d 154, 167 (1st Cir. 2016) (citing <u>Alleyne</u>, 133 S. Ct. at 2155).

Here, the issue of drug weight or quantity was submitted to jury for both Counts 1 and 2, and the jury made their findings on each count beyond a reasonable doubt. While the jury did not find that 100 grams or more was attributable and reasonably foreseeable to Jimenez with respect to the conspiracy count, it <u>did</u> conclude that the quantity of heroin that Jimenez possessed with intent to distribute or distributed was 100 grams or more of heroin.

To adopt Defendant's argument would be to inappropriately and improperly ignore the jury's verdict on this issue. The jury was required to find beyond a reasonable doubt that

---

The <u>Barbosa</u> court went on to explain: "We believe that the structure of the drug statutes and the policies behind them show that the Government's *mens rea* burden has not changed with the advent of *Apprendi*. Under *Apprendi*, drug identity may now be a separately delineated element of the offense, but that conclusion alone does not lead to the inevitable result that the Government must prove the defendant's knowledge of that fact. . . . Moreover, we see no reason, consistent with Congress' overall intent in promulgating the drug laws, to extend the *mens rea* requirement to the precise controlled substance at issue, even in the face of having concluded that it may be an element of the crime. Barbosa's awareness that he was trafficking in what he believed was a controlled substance, albeit a different type for which he was arrested, is all that is required to satisfy the *mens rea* portion of the substantive offense." <u>Barbosa</u>, 271 F.3d at 458.

Jimenez knowingly and intentionally possessed with intent to distribute or distributed a heroin and that the offense involved more than 100 grams of heroin. That is precisely what the jury found. Alleyne requires no more than the issue of quantity be submitted to the jury, and because of the jury's verdict, 21 U.S.C. § 841(b)(1)(B) applies in this case.

### III. CONCLUSION

The government submits that a sentence of 78 months, the low-end of the guidelines, is appropriate in this case after taking into consideration all of the factors set forth under 18 U.S.C. § 3553(a).

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: /s/ Michelle L. Dineen Jerrett
MICHELLE L. DINEEN JERRETT
WILLIAM F. ABELY
Assistant United States Attorneys
United States Attorney's Office
595 Main Street
Worcester, Massachusetts 01608
michelle.dineen.jerrett@usdoj.gov

Dated: April 22, 2019

### CERTIFICATE OF SERVICE

This is to certify that I have served counsel of record for the Defendant a copy of the foregoing document by ECF.

/s/ Michelle L. Dineen Jerrett
MICHELLE L. DINEEN JERRETT
Assistant U.S. Attorney

Dated: April 22, 2019